Jim Van Ness. I am here appearing for Edward Charles Bollinger. This morning I'd like to address two, and only two, fundamental issues. The one is the court's determination on statute limitations as a bar. The second is a brief discussion on qualified immunity as there's some new developments in Ninth Circuit case law that actually cite the Bollinger decision in this court and Supreme Court. At the conclusion of my argument, I am asking that this court reverse the court's decision on both issues and remand it for further proceedings. In 1994, the United States Supreme Court handed down a decision, Heck v. Humphrey. They handed that decision down three days prior to Mr. Bollinger being forced to go on parole. The Heck decision articulated two standards, and they are read together. It's the favorable termination rule and the equitable polling rule. Simply put, Heck was a case where a 1983 action for injuries ostensibly suffered related to his conviction. The court reasoned that by addressing a 1983 claim, if he was successful on that claim, it would also automatically assume that the conviction itself was invalid. Therefore, they set forth a rule that basically says that before you can address any claims that attack the sentence collaterally, you must first overturn that sentence or conviction. With that rule is the equitable polling rule that says that since you cannot attack it, the statute of limitations is told on a 1983 action until it is successfully attacked and convicted, excuse me, overturned. The court did provide an exception that's worth noting, and that is if the 1983 action is in regard to something that does not affect the conviction or the sentence, then it can proceed and there is no tolling or no bar to the action. Further, the majority in Heck also recognized, although Heck did not present these facts, that the possibility of a prisoner who was released could not still bring a claim until he was exonerated from the earlier claims. Heck has been applied not only in the incident situation. Heck was a habeas case that applied strictly for 1983 proceedings. Heck has been applied subsequently to parole revocation, loss of good time credits. In the Ninth Circuit, Heck has been applied, this was this year's decision in Gillom v. Napa County, in child protective proceedings. Another 2003 case is in the Ninth Circuit, Vipperman v. Concha was length of parole. The majority of the circuits have addressed parole-related violations as well or the imposition revocation of parole. Extending Heck further, in the Sixth Circuit, Heck has also been applied to ordinance violations where the 1983 claim under equal protection was brought against the City of Cleveland for failing to apply the same standards in enforcing ordinances to private businesses as it did to state-sanctioned businesses. Heck was determined to apply there as well. It's our basic position that the Heck decision does apply to the Bollinger case, that Bollinger in Bollinger 1 and 2, the Court of Appeals in the Oregon Supreme Court case, was a direct attack upon the imposition of parole and until he was exonerated that the statute of limitations did not be done to run and thus the claim was not barred. I have no reason to tell the Court why the district court failed to pick up this case. I believe it's dispositive of the issue. There is, and the state may try to distinguish Bollinger, there are various exceptions crafted. For instance, there's a line of excessive force cases that hold that Heck does not apply, but those go to the procedure used in arrest, not the conviction or sentence, and that's what Heck and its progeny stand for. So, counsel, are you abandoning the other arguments you made in view of the Heck argument? I don't think we're abandoning them. We very inarticulately argue the same reasoning that Heck does. You argue continuing violation. We did argue continuing violation. I don't think that was our best argument. We argued that The discovery rule The discovery rule, and I think that has a parallel to Heck. Regarding qualified immunity, the court also extended qualified, the district court also extended qualified immunity to the state. A case that was rendered by this court just July of this year, which was Himes v. Thompson, it's 336 F. 38, July 10th of this year, cited the procedures. It was against also the Oregon State Board of Prisons and Parole. Noting the language in Bollinger 1 and 2 that in adopting the Bollinger reasoning that the statute complained of clearly set for the conduct that should have been complied with and that the state did not do so, and that decision also reversed the state's decision. Counsel, did you cite that case? This is a brand new case. It was not in the record when we wrote the briefs. Did you do a 28-J letter informing us of that case? We did not. We just found this case recently. One other case on qualified immunity in this circuit, which is in our brief, Sorrell v. 965. The reason I reference this case is the saucer analysis set forth by the Supreme Court, which has also been adopted by the circuit. That was a 2001 case, Saucer v. Katz, U.S. Supreme Court. That's part of three-part analysis that this circuit also applies. The district court looked at the language in the Oregon Supreme Court's decision where the court speaks that the state's interpretation of the statute is highly unlikely, and the district court felt that that did not meet the saucer test insofar as it did not state that this was a known statutory or constitutional right and that the prison officials should have known by its context that it applied. In Sorrell v. McKee, this court said, to defeat the defendant's claim of qualified immunity, the claimant had to show that the policy was such a far cry from what any reasonable prison official could have believed was legal that the claimant knew or should have known they were breaking the law. Ironically, the Supreme Court in Bollinger II uses the identical analysis and language. The difference is that the district court stopped with the first sentence. If I could quote, this is on page 9 of the Supreme Court's decision. We agree with the inmate, however, that the board's suggested reading of the statute is that it goes on. By its express terms, ORS 144-270-2 is directed to the determination and modification of conditions of parole. It permits the board to condition parole upon the inmate's acceptance of the entire package of the board's conditions. Even if an inmate might be said to have failed to satisfy that precondition by refusing to accept the entire package, that is still a far cry from expressing intent that the board be allowed to compel parole in the first instance. Did you want to say some time for rebuttal, counsel? I do, Your Honor. Thank you. I please support counsel Jazz Adams for the Oregon FLEs. As plaintiff did not cite Heck and as the Heck case and its progeny are not statute of limitations cases directly, we did not raise it ourselves. We did not breathe the potential impact. But given that we do agree that since the statute of limitations doesn't begin to run until the claim has accrued, Heck may have a bearing. The only thing I would say in this context is that we did argue in our brief that when the Oregon Court of Appeals determined the constitutional invalidity of the second parole supervision order, we argued that plaintiff's 1983 claim accrued at that time, and that was more than two years before he filed his 1983 action. How would it accrue at that time if it was still subject to review? And that is the flaw in that position, because if it's not final then and if the claim did not accrue until the Oregon Supreme Court, albeit on a statutory ground, not a constitutional ground, declared the parole supervision order invalid, then we would concede that the 1983 claim was not time-barred. All the other court claims would still be subject to the general as opposed to the special Heck rule. But we would concede that if the Oregon Supreme Court decision was what caused the 1983 action to accrue, then this 1983 claim in this case was not time-barred. But the, as you know, the district court decided the 1983 action and dismissed it alternatively on qualified immunity. I do want to address some of the arguments here. One of the arguments, similar in a sense to the case I hear for the first time today, one argument raised for the first time in the reply brief is that qualified immunity cannot be determined on the basis of the complaint because counsel alleged the subjective bad faith and intentional disregard of his rights. And in his reply brief at 6-7, he suggests that those allegations per se include qualified immunity. And citing Harlow decision at 7-15, first let me say that we don't believe the court should reach any issue that is raised for the first time in a reply brief. But second of all, plaintiff is simply wrong about Harlow because Harlow went on to hold that because government officials performing discretionary functions may or would have their discretion disrupted through broad-ranging discovery and deposing of numerous persons, including professional colleagues, the Harlow court held rejected the theory that fair allegations of malice would suffice to subject government officials to 1983 action and the cost attended upon it. And so the court held, this is at 8-17 or 7-17 and 7-18, we therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. So clearly the standard is one of reasonableness and not of subjective intent. Counsel, the difficulty I have is that the determination of qualified immunity was made on a 12-6 motion. So what standard do we use when the qualified immunity ruling is made on a 12-6? That's a good question, Your Honor. Counsel actually did argue for the first time again in his reply brief that because the state had not filed an answer and had not alleged this as an affirmative defense, therefore the court could not, Mr. Corbett was not entitled to reach it. We looked at the cases and it actually is well established that an affirmative defense can be raised and resolved by a 12-B motion to dismiss as long as the four corners of the complaint furnish a sufficient basis. And I would cite to you the Wyatt v. Terhune case, 280 F. 3rd, 1238. That's a 2002 decision of this circuit. So what information in the four corners of the complaint in your view established the qualified immunity? In the amended complaint, it's in the excerpt of record at page 4, he alleges that the parole sentencing guidelines kicked in to releasing them before their good time release dates. He attached his exhibits to his original complaint, which were also referred to in his amended complaint. He attached copies of the original and the revised board action form orders that imposed parole supervision. That's referred to again at excerpt of record page 4. He also attached a copy of the Oregon Supreme Court's opinion as Exhibit 3 to his original complaint, the Bollinger II opinion. And so really there is an issue of qualified immunity really is at the – depends upon what did – it's really almost a question of law because it's an immunity from suit. If the reasonableness prong of that is a question of law, would a reasonable official have known that what their actions in ordering this early release violated was invalid statutory or constitutionally? And let me just clarify – this bears on counsel's argument about the Oregon Supreme Court's decision in this case. Let me clarify that the parole board and its members based their decision on a statute that was on the books. But didn't the Oregon court kind of chastise the board a little bit for its reading of the statute? It did. It used the term highly unlikely and I took a look at that. Basically, they were addressing only one argument that the state's counsel made before the Supreme Court was not an issue that had been raised before the court of appeals. And basically we had argued that – just to clarify, there was a statute, a 1985 statute that had been on the books for nine years that expressly allowed the board to order early release. But it was not a statute that had been in effect at the time of the offenses had been committed in 1984 and 1985. That's why the Oregon Supreme Court used an ex post facto analysis to invalidate. The Oregon Supreme Court, we sought review of that ex post facto decision and I believe that we argued to the Supreme Court even the law in effect at the time. So we're looking at law as of 1984 and one of the arguments we made is that ORS 144.270, which requires parolees to, quote, accept the parole granted subject to all terms and conditions specified by the board, we argued that that included the parole itself. The Supreme Court in a decision by Mick Gillette, Justice Mick Gillette said he thought that interpretation was unlikely looking at another statute that nobody – that had not been cited in the court of appeals. But counsel, doesn't all of that at least raise an issue regarding reasonableness? Well, we would – I guess my response would be that there was no decision, as the district court found, there was no decision on the books that invalidated the parole board's practice at the time. There was a statute that directly governed it. There was no ex post facto decision until the court of appeals so ruled. There was no statutory interpretation by any tribunal. I don't think that the – that a comment that a litigation position asserted before the Supreme Court being highly unlikely means that the actions of the officials who were – who had done this routinely and not on a discriminatory basis, for example, was not reasonable. I think there – the qualified immunity cases do evince a large measure of deference to the actions of the officials. Your argument would have more force if we were at a summary judgment stage. But at a 12 v. 6 stage, I find it difficult to make the leap that you're making. The district court did treat it as a summary judgment motion as the cases do allow if the four corners of the complaint furnished a basis. And I would just note that in the response which we attached to our supplemental excerpt of record to the motions to dismiss, counsel did not raise issues of fact. And so it was really – there was no dispute about it. He said it was treated as a summary judgment motion? He does say that in his final order. And that is, in fact, what the cases provide, that a 12 v. motion would – could be treated as a summary judgment motion. Does our record that we have here on this case contain everything that the trial judge looked at in the – in treating this 12 v. 6 as a summary judgment? Yes. I don't think necessarily everything is in the excerpts of record, but it is in the record. For example, the exhibits I mentioned did not – were not attached to a plaintiff's excerpt of record, but the exhibits that I mentioned, the board action forms and the Supreme Court decision, of which you can take judicial notes anyway, are attached. We believe your record transferred up from the district court would contain everything the district court had before it. Is it your position that, in addition to the complaint, something else was submitted to the district court which would demonstrate that the defense of qualified immunity applies here, that the law was not clearly established? I don't believe anybody submitted any affidavits, so the only submittals would have been memoranda of law arguing that – So we're left to the face of the complaint? Yes, and the exhibits attached there, too. Well, what do those exhibits show in terms of the qualified defense or whether the law was clearly established? The – those exhibits don't really bear on what – whether the law was clearly established, but I think the memoranda certainly do describe what was in place at the time as to the – and the district court's opinion. The complaint did not say, they violated my constitutional rights, which were clearly established. Is that true? The complaint did say – allege that – the allegation that there was a violation of this constitution. Yes, and that's – that's first step of saucier.  What about clearly established? Was that alleged in the complaint? One moment. My time is up. My time is up. I can look at the – Let me answer the question. You're not saved by the bell. I'm not saved by the bell. You've told us to look at the four corners of the complaint. I need your help. Well, I'm looking at the Exhibit Director 5 and 6 where the 1983 claim is alleged in and I do not see – just as it claims that the deprived – defendant deprived Bollinger of his rights, failed to provide him with protection for deliberate indifference. I don't see that. Thank you. All right. Thank you. Thank you, counsel. Reball? Just to clean up a few quick points, counsel for the defendant seems to argue that there must be some clearly established law in the years that ensued since Harlow that is not what the law requires. Solinsky v. Cain, which is a Ninth Circuit 1996 case, says a public official is not entitled to qualified immunity when the contours of the alleged violation right were sufficiently clear that a reasonable official would understand what he was doing. That's clearly established law. In deciding the second prong of immunity, it's not necessarily that the alleged acts of privilege were held unconstitutional. That's Malick v. Brown. That's also a Ninth Circuit 1995 case. The only other thing I wanted to mention is in Bollinger 1 on the issue of interpretation of the statute. The Court of Appeals notes that the board itself did not follow the interpretation that it is arguing today and that it argued then. And they rejected it then and it should be rejected now. Thank you. Thank you, counsel. The case just argued is submitted. The next case on calendar for argument is Hanlon v. Clarkford White. Thank you. Thank you.
judges: Goodwin, Alarcon, Rawlinson